FILED
2022 Feb-10  AM 09:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHARITY HOWARD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.:** |
| **vs.** | ) | |
| | ) | **JURY DEMAND** |
| **CITY OF HOMEWOOD, AL,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>COMPLAINT</u>

COMES NOW the Plaintiff in the above-styled case, Charity Howard, by and through her undersigned attorney, and files this action against the City of Homewood, Alabama.

This is a Title VII disparate treatment and retaliation case arising out Plaintiff's previous employer, Defendant City of Homewood, Alabama, violating Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e, *et seq*) when it subjected Plaintiff to race-based disparate treatment, then retaliation. Defendant fired Plaintiff for doing nothing more – and significantly less – than her Caucasian co-workers and/or for exercising her right to Free Speech, as protected by and under the First Amendment to the United States Constitution. Defendant Homewood also retaliated against Plaintiff for her participation in Title VII-protected activities. Additionally, Plaintiff alleges that but for her race (Black), Homewood would not have perpetrated discrimination and retaliation

against her and/or that her race was a motivating factor in the such treatment. Plaintiff also claims Homewood violated 42 U.S.C. § 1983 based on her race. Plaintiff has and will suffer damages proximately caused by Homewood. She seeks compensatory damages and other relief against Homewood.

## JURISDICTION AND VENUE

1.    Plaintiff Charity Howard (née Moore) brings this action under Federal Question Jurisdiction, 28 U.S.C. §1331, arising out of the City of Homewood violating Title VII of the Civil Rights Act of 1964, as amended [Title VII] (42 U.S.C. §2000e *et seq*)*,* and 42 U.S.C. § 1983.

2.    Venue is proper as *(a)* Defendant Homewood is situated in Jefferson County, Alabama, and, *(b)* a substantial part of the claim occurred in Jefferson County, Alabama, that is, within in the Southern Division of the Northern District of Alabama, where Plaintiff Charity Howard resides.

3.    Plaintiff filed her Equal Employment Opportunity Commission (EEOC) Charge of Discrimination in the Birmingham, Alabama, District Office using her previous name, Charity Moore, on or about January 4, 2021 (Charge:  420-2021-00747).

4.    Upon Plaintiff's request, on November 16, 2021, U.S. Department of Justice Assistant Attorney General, Civil Rights Division, Kristen Clarke, issued a Notice of Right to Sue (NRTS) to Plaintiff. A copy of Plaintiff's NRTS is attached hereto.

5.  Plaintiff files this action within 90 days from her receipt of the EEOC's NRTS, as required under Title VII.

## PARTIES

6.  Plaintiff Charity Howard ["Plaintiff" or "Howard"] is an adult over the age of nineteen (19) years of age who resides in Birmingham, Jefferson County, Alabama.

7. Defendant City of Homewood ["Defendant" or "Homewood"] is a municipality incorporated under the laws of the State of Alabama and which is situated in Jefferson County, Alabama.

8. At all times relevant to the events, acts and omissions described herein, the Homewood Police Department ["HPD"] Police Chief Tim Ross ["Chief Ross"], as well as any / all HPD Command Staff, HPD decision-makers, as well as all other HPD police officers (both named and unnamed) referred to herein, acted within the line, course and scope of their employment with Defendant Homewood and under color of law.

## STATEMENT OF FACTS

9.  Plaintiff is a 31-year-old Clinical Medical Assistant who is employed by Obstetrician / Gynecologist practice located in Birmingham, AL.

10.  Plaintiff was previously employed by Defendant Homewood as a police department dispatcher in the HPD.

11.  Plaintiff is mother and wife, residing with her family in Birmingham, Alabama.

12.  Plaintiff is Black.

***Homewood's Recent Track-Record on Workplace Racism and Discipline:***
***A General Overview***

13. In or around July 2016, Chief Ross met with several black HPD officers who were concerned about racial tension in the HPD.

14.    One of the black officers who attended the meeting described the meeting and Chief Ross's conduct with disdain, calling it just "bullshitting and cooning."

15.    Although Chief Ross promised a "diversity initiative" during the aforementioned July 2016 meeting, no diversity initiative has occurred, nor have the HPD's employment policies regarding workplace race discrimination been updated.

16. During the July 2016 meeting a certain Sgt. Smith's name came up regarding his troubling racist record and it was discussed in front of Chief Ross (who had previously been Sgt. Smith's supervisor).

17. According to at least one black officer who attended the July 2016 meeting, the Sgt. Smith once called a Black HPD officer "tar baby."

18. In 2018 Sgt. Smith was honored by Homewood with the prestigious "Chief's Award."

19. In February 2019, while on Family Medical Leave Act leave owing to a tumor found on her spine, Plaintiff's dispatch supervisor, Steve Sparks, contacted her and told

her he wanted Plaintiff to return to work ahead of her designated leave time. This was in order to give two (2) Caucasian dispatchers non-emergent medical leave.

20. Plaintiff complained to HPD Lt. Keith Peterson, her supervisor's supervisor, about the double-standards between herself and her Caucasian. Lt. Peterson did not deny the race-based double-standards alleged by Plaintiff. He told her would look into it, but Plaintiff never heard back from Lt. Peterson.

21. Plaintiff's complaint to Lt. Peterson involving race-based workplace disparities constituted a under Title VII, one of several Title-VII-protected activities in which Plaintiff participated between February 2019 and early July 2020. See, e.g., Paragraphs 28-31, 46, and 50 below.

22. In or around February 2019, another Black dispatcher was police-escorted off the premises for asking to leave work due to illness. Caucasian dispatchers were regularly allowed to leave work or take time off from work due to illness with no negative consequences. Chief Ross and Homewood were put on actual notice of this disparate treatment in May 2019, through that dispatcher's, Plaintiff's co-worker's, EEOC Charge of Discrimination.

### *Plaintiff's Background of Service to Her Community*

23. In the years 2017 through 2019 Plaintiff and the not-for-profit organization she helped found, advocated women breastfeed their newborns.

24. Plaintiff's not-for-profit took its message to Black women especially, whom the organization saw as underserved by this child (and mother) health care message.

25. Plaintiff was recognized for her contribution to both the Greater Birmingham community, and to Alabama, in articles on Yahoo.com, in *Cosmopolitan*, in *The Daily Mail*, and on Birmingham television stations CBS 42, ABC 33/40 and WBRC.

26. In October 2019, *The Homewood Star*, a local newspaper, featured Plaintiff in an article. In November 2019 she attended "The Vulcans Community Awards Dinner," where Plaintiff was one of those recognized and who received an award from Birmingham's Mayor for her "Civic Pride, Progress, and Leadership in the Birmingham Region."

27. Besides involvement in her own not-for-profit, over the years and into 2020 Plaintiff had worked with and/or advocated the positive community works of organizations like New Era Birmingham, Stop the Violence Rallies.

### *Plaintiff Participates in Protected Activities*

28. On or about May 17, 2019, Plaintiff filed an EEOC Charge of Discrimination against Homewood which included allegations of HPD workplace race discrimination.

29. Plaintiff's filing an EEOC Charge alleging racism within Homewood's HPD constituted a protected activity under Title VII.

30. One of Plaintiff's Black co-workers also filed an EEOC Charge against

Homewood in May 2019, alleging race discrimination within the workplace, in the HPD. See the preceding Paragraph 19.

31. In late July 2019 both Plaintiff and her co-worker, who had each filed an EEOC Charge of Discrimination, were interrogated about their respective Charges by an agent or representative of Homewood. This constituted Plaintiff's participation in a protected activity under Title VII.

32. On September 18, 2019, Plaintiff emailed Chief Ross and Internal Affairs Sgt. Doug Finch, both Caucasian, in part alleging racism in HPD's treatment of her during the preceding week, accusing her of illicit "social networking" – between 1 and 2 years prior to September 2019, Plaintiff had made and posted a private Instagram video regarding breastfeeding. Plaintiff had made the video while on break at work and was scrupulous in covering up her badge, in order to make sure no one unfamiliar with her employer could identify her as a Homewood or HPD employer.

33. Plaintiff was nevertheless reprimanded by Chief Ross.

34. A few weeks later, in or around October 2019, Caucasian HPD dispatcher posted a "meme" on Facebook depicting an elderly Caucasian man holding a rather large handgun and a red ball cap reading "Right Wing Fanatic," captioned Too Old to Fight, Too Slow to Run, I'll Just Shoot You and Be Done With It." The meme stayed up for at least half a year.

35. Caucasian dispatcher Steve Sparks was not investigated or disciplined for this.

36. In or around mid-March 2020 Plaintiff notified Homewood that Internal Affairs Sgt. Doug Finch, had posted a meme on Facebook reading: "WE USED TO STACK GOOKS LIKE YOU FOUR DEEP IN KOREA. USED YOU FOR SANDBAGS." The meme had been up for almost three (3) years by that time. One of Plaintiff's grandparents is Asian. Plaintiff found the meme reprehensible.

37. Sgt. Finch's "GOOKS" meme stayed "live" for a time after Plaintiff notified Homewood, then Sgt. Finch took it down. The HPD did not reprimand Sgt. Finch as it had Plaintiff. Sgt. Finch is Caucasian.

### *Events Leading to Homewood Firing Plaintiff*
### *Her Additional Protected Activities*

38. On May 25, 2020, George Floyd was murdered by a Minneapolis police officer, Derek Chauvin. Mr. Floyd was Black.

39. Over the following weeks and months, vigils, demonstrations and rallies, including those organized by Black Lives Matter groups, sprang up around the United States, including in the Birmingham Metro Area, which includes Homewood.

40. On or about Saturday, June 20, 2020, less than one (1) month following George Floyd's murder, an HPD police officer's social media posts made Alabama news. Corporal Jon Newland had been posting incendiary, racism-laced, "rap" videos on social media. Corporal Newland was in uniform and in an HPD patrol vehicle in at least one of

his videos. At least one of Officer Newland's videos celebrated "Valhalla" – Norse "heaven" and a common White Supremacist trope; declared: "With a Rebel Yell I will prevail;" pledged that, as one who wears "the black and blue," "Around your neck I flex this choke;" and included the refrain: "Empathy, that's what I feel, but I'm always ready for the kill."

41. In 2020 Homewood's racial demographic broke down to roughly 79 percent Caucasian, 14.5 percent Black, with other and mixed races making up the balance; while around the same year HPD misdemeanor offense and traffic ticket enforcement actions occurred thusly: about 28 percent against Caucasians, about 60 percent against Black persons, with other 11-12 percent against other races or ethnicities.

42. Corporal Newland's social media videos came to in Alabama media during the height of the Black Lives Matter demonstrations regarding the George Floyd murder.

43. While the words are not contained in its Police Department Policy and Procedure Manual, Homewood has claimed in the past that it maintains a "zero tolerance policy" regarding racism within its Police Department. Such statements are not true. As a custom or practice, Homewood and the HPD tolerate racism within the workplace.

44. Chief Ross gave Corporal Newland a three-day suspension and demoted him from Corporal to Officer – for an HPD Corporal's social media post/s celebrating racist tropes and violence. However, this disciplinary action was not finalized until the third

week of July 2020. In the mean time, on Chief Ross's recommendation, Homewood had fired Plaintiff.

45. On or about June 24, 2020, within days following the media reports of then-Corporal Newland's racist "rap" videos. HPD Sgt. Doug Finch telephoned Plaintiff, told her she was suspended from work and told her to come into the HPD for questioning the next morning. He refused to tell Plaintiff why she had been suspended, other than to say it was regarding "social media policy."

46. On or about that same day, following Sgt. Finch's telephone call suspending her, Plaintiff filed a grievance with the Jefferson County, Alabama, Personnel Board. In sum she stated she felt ambushed, intimidated. Plaintiff's grievance mentioned inconsistency in disciplinary actions, and that White Supremacy and other racism should be eliminated from the HPD's ranks and practices. Plaintiff's grievance constituted opposition to workplace discrimination and was a protected activity under Title VII.

47. Plaintiff reported to the HPD the next day, June 25, 2020. Sgt. Finch still refused to tell Plaintiff why she had been suspended. In a small office, Sgt. Finch stood over Plaintiff and began questioning about whether she had been at work on a particular day. Plaintiff felt intimidated.

48. During Sgt. Finch's questioning Plaintiff said she felt he had a conflict of interest, given that she and another Black dispatcher had put Homewood on notice of Sgt. Finch's racist Facebook meme just three-or-so months before.

10

49. Sgt. Finch refused to recuse himself. He accused Plaintiff of refusing to "cooperate" with an investigation. Plaintiff did not refuse to cooperate with an investigation, she merely wanted to talk with someone other than Sgt. Finch.

50. Plaintiff filed a second Personnel Board grievance following her session with Sgt. Finch in which she reiterated and added to her allegations of race discrimination within the HPD. This constituted opposition to workplace discrimination and was protected activity under Title VII.

51. Over the next week, Plaintiff repeatedly asked what she had been suspended for, but over and over again Sgt. Finch and other Command Staff members ignored her requests.

52. At the end of the first week of July 2020, Plaintiff HPD finally informed that she had been suspended for, *inter alia*, posting on social media during work, for talking about Corporal Newland (while his case was being "investigated"), and for refusing to cooperate with an HPD investigation.

53.  The day following Corporal Jon Newland's racially-charged "rap" video/s being reported throughout Alabama, and the United States – that is, on Saturday, June 20, 2020 – a protest / demonstration was held held in a park in Homewood, primarily in remembrance of George Floyd, for racial justice.

54. During that demonstration HPD officers "staked out" both the park and social media.

55. Plaintiff estimates that for about 15 minutes while at work, she had looked at an commented on a social media live thread during the vigil.

56. During Plaintiff's five-or-so years employed by Homewood, and while working in the HPD dispatch room, she saw Caucasian dispatchers regularly spend time chatting on social media; surfing the web and buying products; and, in the case of a senior, spending an inordinate amount of time surfing "Web MD" and similar sites for medical information for himself. It was common knowledge and a common practice for dispatchers to be "on line" while on the clock.

57. Homewood had even bought televisions and subscribed to one or more streaming services for the dispatchers to enjoy during "down time."

58. Plaintiff's online comments during the Homewood vigil for George Floyd, the ones that had so riled and angered Sgt. Finch and others with Homewood's HPD's Command Staff, were innocuous and/or touted positive community activities.

59. Plaintiff's online comments during the Homewood vigil for George Floyd, the ones that had so riled Sgt. Finch and others with Homewood's HPD's Command Staff, included "Be the change you want to see."

60. Plaintiff's online comments during the Homewood vigil for George Floyd, the ones that had so riled and angered Sgt. Finch and others with Homewood's HPD's Command Staff, included a response to one person who accused those gathered in the park of breaking a "protest law." Plaintiff's response:  "[Name omitted] What 'protest

law' are they breaking? The right to freedom of assembly?"

61. Plaintiff's online comments during the Homewood vigil for George Floyd, the ones that had so riled Sgt. Finch and others with Homewood's HPD's Command Staff, included;  "[Name omitted], Hi! Please come out to Black neighborhoods when Chocolate Milk Mommies host[] Baby Showers, 100 Black Men Deep Walk marches through the area and does school supply drives, toy drives, and trunk or treats, Stop the Violence Rallies hosted by 95.7 Jamz, or volunteer with C4 Mentoring group. Oh, let's not forget about all the neighborhood clean-ups performed by New Era Birmingham!. . ."

62. Plaintiff's online comments during the Homewood vigil for George Floyd and/or demonstration against Corporal Newland's public racism, the ones that had so riled and angered Sgt. Finch and others with Homewood's HPD's Command Staff, were restrained and positive. Plaintiff refused to engage with one person who at least three (3) times offered only, "White power" in their comments; Plaintiff refused to be pulled into that vortex of hate.

63. Plaintiff did not identify herself as a Homewood or HPD employee, nor were any of her comments intertwined with or relating to her job functions or responsibilities.

64. Plaintiff's social media comments regarding matters of public concern and public interest.

65. Lieutenant Greg Brundage has been employed by Homewodd and the HPD

for more than 20 years.

66.  Lt. Brundage agrees that the matter Plaintiff was commenting on (on social media during the late June 2020 vigil in the wake of the George Floyd murder) was a matter of public concern, social justice, racial justice.

67. On or about Monday, July 6, 2020, Plaintiff met with Chief Ross and Sgt. Finch in the Chief's office, as Sgt. Finch had directed at the end of the previous week.

68. Plaintiff was accompanied by her attorney, Ms. Kira Fonteneau.

69. At this hearing Chief Ross accused Plaintiff of refusing to cooperate with an "investigation," which Plaintiff disputed and which was not, in fact, true.

70. Chief Ross further accused Plaintiff of failing to "call in" to Sgt. Finch during her suspension, which Plaintiff disputed and which was not, in fact, true.

71. Chief Ross admitted that all Homewood and HPD policies applied to all employees equally, but, in fact, they do not. Chief Ross, the HPD Command Staff and Homewood routinely give Caucasian HPD employees "slack," allow Caucasian HPD employees to skirt, violate or ignore policies and procedures with little-to-no negative consequences, especially compared to HPD's Black employees, including Plaintiff.

72. The entire basis or pretext used for HPD's "need" to suspend Plaintiff and/or otherwise place her on "leave" to "investigate" her was a sham:  Sgt. Finch and Chief Ross had records of Plaintiff's days on and off work; Sgt. Finch and Chief Ross had copies of Plaintiff's social media comments in-hand; it was common knowledge

throughout HPD that dispatchers, including or especially Caucasian dispatchers, routinely spent time on social media during working hours. There was nothing *to* "investigate."

73.  Just three (3) days later, on or about July 9, 2020, Homewood fired Plaintiff.

74. Homewood fired Plaintiff for and/or arising out of her exercising her right of free speech, as protected by and under the First and Fourteenth Amendments to the United States Constitution.

75. Homewood's preferred reasons, that Plaintiff had "refused" to cooperate with an investigation, which was not true, and had failed to "call in" to Sgt. Finch while suspended, which was untrue and/or untrue to the extent alleged, both accusations being mere pretexts to fire Plaintiff, especially given the various serious policy violations committed by Caucasian HPD employees that repeatedly go unpunished or underpunished by Chief Ross.

76. Chief Ross has contended that, on one hand, employee investigations are opened when a complaint against an employee are filed. But no one filed a complaint against Plaintiff for her social media comments – Chief Ross and Sgt. Finch just decided to "investigate" her. Yet on the other hand, Plaintiff had filed race discrimination complaints regarding HPD employees – namely dispatch supervisor Steve Sparks and Internal Affairs Sgt. Doug Finch – that Chief Ross and/or other HPD Command Staff

and decision-makers either ignored, dismissed out of hand, or handled by HPD playing the role of *de facto* advocate <u>for</u> these Caucasian employees.

77. Ignoring, being dismissive of internal complaints of workplace race discrimination, or *de facto* defending the perpetrator/s, are – or should be – HPD policy violations committed by Chief Ross and/or other member/s of HPD's Command Staff, but for which Homewood refuses to take corrective action or mete out discipline.

78. Over the years, Chief Ross and Homewood have allowed and continue to allow Caucasian HPD officers and employees to remain employed despite serious policy breaches (including racism), policy breaches that the allegations made against Plaintiff cannot hold a candle to.

### Homewood's Deliberate Indifference

79. In or around the late summer or early autumn of 2019, a Black HPD officer complained to Chief Ross about getting racially harassed by a Caucasian HPD officer. Chief Ross "shifted" the Caucasian officer, but did not discipline him, let alone fire him.

80. Homewood Police Department's written policy regarding race discrimination (as well as other types of discrimination) is relegated to three (3) vague, circular, poorly-worded sentences, found at the bottom of a page in the middle of an approximately 150-page Policy and Procedure Manual (double-sided, thus totaling about 300 written pages). The Policy and Procedure Manual is completely silent regarding Retaliation.

81. For comparison's sake, the HPD policy regarding "Trousers Belt" and "Hat" totals six (6) sentences, twice that of HPD's race discrimination policy.

82. Homewood Police Department's written policy regarding race discrimination reflects Defendant Homewood's overall disdain or contempt for eliminating, or at least making an good faith attempt to mitigate, the custom or practice of workplace race discrimination within the HPD.

83. Over the past half-decade or more, and with actual notice of allegations of HPD workplace racism, Defendant Homewood has taken no substantive steps to address and cure, or even attempt to cure, HPD workplace race discrimination.

### *Homewood's Failure to Train & Supervise. More Deliberate Indifference.*

84. Homewood provides only infrequent training courses, seminars and the like to the HPD regarding workplace racism and race discrimination.

85. With actual knowledge of the HPD's and Chief Ross's abysmal track record regarding workplace racism and, over the years, Chief Ross consistently ignoring or coddling Caucasian racists within the HPD, Defendant Homewood continues to simply bury its head in the sand regarding training and supervising both Chief Ross, the HPD Command Staff and all of its officers and employees regarding workplace race discrimination and what *should* be a zero tolerance policy regarding it.

86. Homewood's aforementioned acts and omissions constitute deliberate and conscious choices made by its policy-makers and describe its deliberate indifference to upholding and complying with Title VII's and 42 U.S.C. § 1983's prohibitions against employment race discrimination, which, in turn, proximately caused the violations perpetrated on Plaintiff, to wit: (a) firing her for exercising her First Amendment right to free speech; and, (b) taking material adverse employment actions against her, including firing, when Caucasian HPD employees are not held to the same draconian, and unconstitutional, standards by Chief Ross and Homewood.

87. Homewood's aforementioned acts and omissions describe deliberate and conscious choices made by its policy-makers and evince a policy that constituted a moving force behind its deliberate indifference to upholding and complying with Title VII's and 42 U.S.C. § 1983's prohibitions against employment race discrimination, which, in turn, proximately caused the violations perpetrated on Plaintiff.

88. Homewood's aforementioned acts and omissions describe its policy-makers' deliberate and conscious choice to follow a course of action, a choice made from among various alternatives, a choice to eschew upholding and complying with Title VII's and 42 U.S.C. § 1983's prohibitions against employment race discrimination, which, in turn, proximately caused the violations perpetrated on Plaintiff.

89. Plaintiff has suffered damages proximately caused by Homewood's materially altering the terms of her employment, retaliating against her for participating in a

protected activity, and for its unconstitutional and other Title VII-violative acts. Those damages include, but are not limited to, humiliation, anxiety, stress, embarrassment and loss of income.

90. Homewood and its police department do not treat similarly-situated Caucasian employees as it treated Plaintiff, who is Black and, not insignificantly, was incredibly committed to her job and to the community at large.

91. But for Plaintiff's race, Black, Homewood would not have subjected her to the materially adverse employment action/s described herein.

92. Given the circumstances described herein, Plaintiff's race was a motivating factor for the race-based disparate treatment and averse employment actions, and violations of Plaintiff's constitutional rights, Homewood perpetrated against Plaintiff.

93. Homewood demonstrated deliberate indifference in both its acts and omissions perpetrated against Plaintiff and in its failure or refusal to train and supervise its Chief of Police, Police Department Command Staff and other police officers, proximately causing both the race discrimination and constitutional violations it perpetrated against Plaintiff and the damages that arose from those unlawful actions.

94. Defendant Homewood, by and through its unlawful acts and omissions, proximately caused Plaintiff to suffer humiliation, anxiety, stress, embarrassment and loss of income.

COUNT I

Title VII – Disparate Treatment Based on Race

95.  By this reference Plaintiff reiterates and incorporates the allegations set forth in the preceding paragraphs as if fully set out herein.

96. Defendant Homewood fired Plaintiff on or about July 9, 2020.

97.  Defendant's firing Plaintiff on July 9, 2020, was a materially adverse employment action.

98. Various Caucasian employees of Homewood and/or its police department have, and have continued to, violate Homewood policies and rules to a degree much greater than any Plaintiff did or was alleged to have done.

99. At Homewood's police department, various Caucasian employees are granted "passes" and leniency for violating policies and rules to a degree the Defendant's Black employees, including Plaintiff Charity Howard, have not enjoyed and do not enjoy.

100.  The circumstances described herein show that a reasonable, objective person could find that but for Plaintiff's race she would not have suffered disparate treatment and materially averse employment actions Homewood perpetrated against her.

101. The circumstances described herein show Plaintiff's race was at least a motivating factor for the disparate treatment and materially averse employment actions Homewood perpetrated against Plaintiff.

102. Defendant's acts and omissions violated Title VII's prohibition on workplace

race discrimination and disparate treatment in the workplace based on race.

103. Defendant's unlawful acts proximately caused Plaintiff to suffer damages, including humiliation, anxiety, stress, embarrassment and loss of income.

## COUNT II

Title VII – Retaliation for Participating in a Protected Act

104. By this reference Plaintiff reiterates and incorporates the allegations set forth in the preceding paragraphs as if fully set out herein.

105. Plaintiff engaged in protected activities, including opposing unlawful employment practices and participating in a proceeding, to wit:  Over the course of a year leading up to Homewood firing her, including filing an EEOC Charge of Discrimination; being interrogated by a Homewood agent regarding her EEOC Charge; emailing Chief Ross and Sgt. Finch and therein her opposition to workplace race discrimination; putting Homewood on notice of Sgt. Finch's racist Facebook meme.

106. Additionally, within about two (2) weeks of her filing a two (2) separate grievances with the Jefferson County Personnel Board, grievances which included allegations of race discrimination within the Homewood Police Department, Plaintiff was fired.

107. Plaintiff suffered an adverse employment action:  Homewood fired her.  Both in the wake of participating in protected activities and in exercising her constitutional

right of free speech.

108.  Homewood fired Plaintiff within about two (2) weeks of her participating in protected activities and a causal connection exists between Plaintiff's protected activities and adverse action perpetrated against her.

109. The retaliation Homewood perpetrated against Plaintiff was such as would dissuade a reasonable employee from filing or supporting a grievance including allegations of race discrimination or otherwise asserting their rights under Title VII.

110. Defendant Homewood, by and through its unlawful acts and omissions, proximately caused Plaintiff to suffer damages, including humiliation, anxiety, stress, embarrassment and loss of income.

<u>COUNT III</u>

42 U.S.C. § 1983 – Race-Based Employment Discrimination

111.  By this reference Plaintiff reiterates and incorporates the allegations set forth in the preceding paragraphs as if fully set out herein.

112.   As a municipality, a government entity, all acts, omissions, race discrimination and the like perpetrated against Plaintiff by Homewood and described herein were done so under color of law.

113. It is patently obvious that racial discrimination in public employment is illegal. See, e.g., *See Smith v. Lomax,* 45 F.3d 402, 407 (11th Cir.1995).

114. The acts and omissions perpetrated by Homewood against Plaintiff describe

unlawful race discrimination in public employment.

115. Homewood violated 42 U.S.C. § 1983 by depriving Plaintiff of her civil rights and discriminating against her based on race and under color of law.

116. For years Homewood has been on actual notice of allegations of racial discrimination within its Police Department, but deliberately refuses to address racial injustice issues therein; Homewood refuses to train and supervise its Chief of Police, Command Staff and certain other HPD police officers so as to instill in them an aversion to, and not a proclivity for, perpetrating race-based disparate treatment of HPD employees. This is a policy choice by Homewood:  To ignore racial injustice within the Homewood Police Department workplace.

117. Defendant Homewood, by and through its unlawful acts and omissions, proximately caused Plaintiff to suffer damages, including humiliation, anxiety, stress, embarrassment and loss of income.

<u>COUNT IV</u>

42 U.S.C. § 1983

Retaliation Against Plaintiff for Exercising
Her First Amendment Right to Free Speech

118. By this reference Plaintiff reiterates and incorporates the allegations set forth in the preceding paragraphs as if fully set out herein.

119. Plaintiff engaged in public speech when on or about June 20, 2020, she made

about a half-dozen comments on a Facebook thread that discussed the racial and social justice demonstration at a park in Homewood, Alabama.

120. Plaintiff's public speech did not regard and was not intertwined with her employment and, in fact, she did not identify herself as a Homewood employee.

121. The incorporation doctrine is a constitutional doctrine through which the Bill of Rights, including the First Amendment and its prohibition on government infringement on Free Speech, are made applicable to the states and their subdivisions – for example, Defendant Homewood, Alabama – through the Due Process clause of the Fourteenth Amendment of the United States Constitution.

122. One of Homewood's most senior and veteran police officers, Lt. Greg Brundage agrees that Plaintiff's June 20, 2020, social media comments were on matters of public concern, and racial and social justice that were important to Homewood.

123. Homewood violated Plaintiff's civil rights under color of law when it not only put her through an emotional, gaslighting, accusatory wringer, but also by firing her, all rising out of and causally connected to Plaintiff exercising her constitutionally guaranteed Free Speech rights.

124. Defendant Homewood, by and through its unconstitutional acts and omissions, proximately caused Plaintiff to suffer damages, including humiliation, anxiety, stress, embarrassment and loss of income.

## REQUEST FOR RELIEF

NOW, WHEREFORE, Plaintiff respectfully requests the following relief after trial of this case by struck jury:

A. Entry of judgment in Plaintiff's favor and against Defendant for compensatory damages, including, but not limited to, lost income and benefits.

B. Entry of judgment in Plaintiff's favor for compensatory damages for described herein proximately caused by Defendant's retaliation.

C. Injunctive relief in the form of an Order requiring Defendant to (i) re-visit and update its discrimination policies and, (ii) retrain City Council Members, Mayor, Chief of Police, Police Department Command Staff, and all employees of the Homewood Police Department regarding Title VII and related employment discrimination laws.

D. Reasonable attorney's costs and fees.

E. Any and all other relief at law or equity to which Plaintiff is entitled.

Respectfully filed on this, the 10th day of February, 2022.

_____
Richard R. Newton,
 Attorney at Law, P.C.
Counsel for Plaintiff

Richard R. Newton,
  Attorney at Law, P.C.
Counsel for Plaintiff
1203 Regal Avenue
Birmingham, AL  35213
Tel:  (205) 356-2498
richardrussellnewton@gmail.com
ASB-0776-w85r

**Served on:**

Hon. Patrick McClusky,
Mayor of Homewood, AL,

(or City Clerk of Homewood, or other person designated by
appointment, or by statuted to receive service of process)

2850 19th St. S.
Homewood, AL  35209

U.S. Department of Justice
Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL

*150 M Street, N.E.*
*Karen Ferguson , EMP, 4CON, Room 9.514*
*Washington, DC 20530*

November 16, 2021

Ms. Charity L. Moore
c/o Richard R. Newton, Esquire
Law Office of Richard R. Newton
1203 Regal Ave.
Birmingham, AL  35213

Re:  EEOC Charge Against City of Homewood, Alabama, Homewood Police Dept., et al.
       No. 420202100747

Dear Ms. Moore:

   Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

   If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

   The investigative file pertaining to your case is located in the EEOC Birmingham District Office, Birmingham, AL.

   This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                              Sincerely,

                              Kristen Clarke
                              Assistant Attorney General
                              Civil Rights Division

                        by       /s/ Karen L. Ferguson
                              Karen L. Ferguson
                              Supervisory Civil Rights Analyst
                              Employment Litigation Section

cc: Birmingham District Office, EEOC
   City of Homewood, Alabama, Homewood Police Dept., et al.